May it please the Court, Stephen Gombos for the appellant in this matter, and I'll reserve three minutes for rebuttal. Two discrete issues before the Court in this case are whether relator's claims fail under Escobar's two conditions test to state a claim for implied certification, and secondarily, whether the claim fails under Escobar's demanding and rigorous materiality standard. I think the backdrop that I'd like to start off with today, the case has been amply briefed, is to think about the balance that the Department of Education set when it decided some 15 years ago to treat violations of the ICB as an issue of regulatory noncompliance and not as an issue of fraud or a basis to seek a return of money or to consistently refuse claims for payment of money or any other factors enumerated by Escobar. And since the Department has decided not to withhold payment from any school based upon ICB noncompliance, has decided not to disgorge Title IV funds for that period, which was 1998 through the current 2015 at least, and we'll get into that in a little more detail, and has never limited, suspended, or terminated an institution's access to Title IV based upon ICB noncompliance, the relator's claim in this case fails. It's a matter of law to satisfy the standard set forth by Escobar, and as this Court's adopted in Kelly, to state an applied certification by showing that two-part test. Where that failure is, to cut to the proverbial chase, is the school does make a certification when it requests funds. That's in the record, I believe, at 183. Actually, it's a record 183. Those certifications are that the student's eligible, is a citizen, has progressed adequately under another regulation called satisfactory academic progress to a point where the funds that are being requested are legitimately earned. There's nothing about ICB noncompliance, if that were the case, that would render those certifications false under the Supreme Court's test. And I think the Kelly case and Campion in this Court applied the two-part test to applied certification claims. I think it stands as precedent. Do either Kelly or Camby address EBID on the issue of implied false certification directly and distinguish it? They don't, Your Honor. But they clearly adopt the Escobar test, and they apply that two-part test. And as I've indicated, when you look at the claim. Well, do you know if that was even raised to the Kelly and Camby courts to address or not? I don't believe it was, and it probably didn't have to be, because the two-part test set forth by Escobar is the test that was applied. Well, I don't know. That's why I ask you that to begin with. You cite this Kelly and Camby for the proposition that this Escobar test is the only way to prove. However, when we got to EBID, we answered a broader question, I thought, left open in Escobar. We said implied false certification occurs when an entity has previously undertaken to expressly comply with the law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required. Well, Your Honor, I think the way you reckon, it's a great question. I mean, the bottom line is I'm searching through this, and frankly, you put me into something I had no idea about. I mean, I've never thought about the False Claims Act in this way before. So now I'm just trying to portion my way, if you will, through Escobar and say, did it really throw EBID out? And I didn't find anything in Escobar that said it. In fact, Escobar says, I need not decide whether all claims for payment implicitly represent that the billing party is legally entitled to payment, which left it wide. And then, so I say, where do I find in Escobar any language stating that the Escobar two-part implied falsification test is the only basis? Your Honor, I believe that test is at least a minimum test. And I think the reason I would advocate that. What did you just say? I believe it's at least a minimum threshold that you have to meet. A minimum? Where does it say that in Escobar? It says at least where you show these two factors. At least? You stated a claim. As to this situation, which confronts us in this case, we're not trying to make a big wholesale argument about this or put down a wholesale plan. We're just saying for this limited situation, we need a two-part test. Now, I said to myself, okay, if only for that they didn't get rid of what we did in EBID, where do we get rid of what we did in EBID? I didn't find that in Kelly, and I didn't find it in Campy. So I'm still stuck with EBID in my view. Give me the real reason why I'm wrong. Judge, I think you're wrong in this case because certifications are made just like they were in the Escobar case. And the alleged noncompliance, regulatory noncompliance here, does not make those certifications at all false, at all. So you have a situation like Kelly, like Campy, and like Escobar. The Ninth Circuit panel in Kelly didn't say that EBID is still good law. It announced the two-part test. It didn't address it. But we would argue that that ruling adopts the Escobar test as the test and that it applies on the facts. Say that again, Your Honor. It didn't say it was the only test. It didn't say it, but it applied it to a case where certifications were made that weren't rendered false by the alleged noncompliance. And there's reason to apply it. It dovetails into my materiality argument. I'll concede. But there's reasons there should be a discerning limiting principle to this. The noncompliance in this case, as we've argued, and I don't think there's going to be any dispute that the government has never terminated access to Title IV funds, has never asked for a return of Title IV funds in the form of a liability. And the fact that you're not terminating an entity's ability to continue to make claims for payment for students that are eligible and earn that money, speaks louder than the regulation statute and contract. Otherwise. As I understand the district court's second opinion in this case. As to materiality. Yes. The court says, well, leaving aside everything else in this case, there is at least an issue of fact on materiality that precludes summary judgment. And so I'm going to ask you a question similar to the one I asked counsel in the previous case, which is, if that is correct, if there's an issue of fact, then the district court's bottom line was correct, and do we even have to consider all the other complicated alternative holdings? Well, I believe in this case, Your Honor, that that is a matter of law for this reason. What is a matter of law? The determination of materiality on the record before you. I'm asking a different question, and you can get to that point. I understand you don't concede it. I'm asking you, in theory, if the district court is correct that there is a question of fact, and I know you don't concede it, but assume with me that there is. Do we have to reach any other issues in the case? Yes, because the other issues would end the case, and the district court's finding of fact, as on the materiality issue, rests on the fact that the alibi. It's not a finding of fact. He says there is an issue of fact precluding summary judgment. It's not an issue of fact for a jury in this case, Your Honor, because there is no evidence that would support a materiality finding. All that you have in this record is the language of the statute, the language of the regulation, and the fact that it is in the program participation agreement. If that is enough, then every requirement under Title IV, which is incorporated in that PPA, would go to a jury on an issue of materiality. And that's not what the Supreme Court decided in Escobar. In fact, they substantially changed the landscape by saying the government action is at the forefront of this analysis. And where the government doesn't treat something in a way that makes it material under the test, consistently refuse payment of claims, terminate an eligibility to make claims, then you're – there's no issue for a finder of fact. A jury would be left to rot speculation in this case on the basis of the record before you, which is why we think you can decide it here today. So in your view, materiality is all or nothing determination? No. Not – in a lot of instances it may not be, Your Honor. For example, let me give you one from the program participation agreement. The cohort default rate provision, as enacted by Congress and the DOE, provides a termination of eligibility if you violate that regulation. Now, if you fraudulently falsify your records to make the rate, that would be material because it would discontinue your entitlement to receive the money. And we know from the Hansen memorandum, and when this case was argued, and I know Your Honor was on the handout panel, we know that that memorandum was in fact the policy. It was officially changed in 2015. Both the GAO and the OIG confirmed that the agency did not consider a violation of incentive comp, ICB noncompliance, as a matter of liability or fraud. Rather, it was a regulatory noncompliance matter more appropriately dealt with under the arsenal and regulatory regime through the institution of a fine. And that's in fact what they did. So, in your mind, following on what you're really telling me, if I'm writing this decision back to the district court, I'm telling them what they ought to look at, what's the level of analysis that Escobar implies or requires? Well, Escobar requires that the government take some action, and for two reasons. It shows what the government's intent is, Your Honor, as to what could be in this case is hundreds of regulations that are incorporated into the PPA. Did the government intend those to relate to claims for payment? And that's the focus of Escobar. And the issue that the Court has to grapple with is if the government never treats it in that manner, can it ever rise to that level for materiality purposes? What language in Escobar tells me what you just said? Well, Escobar lays out a detailed number of factors. I know what they said. Okay. But what language would you point to that says exactly what you've said? Your Honor, I would point to this fact, that when you look at all of the factors that Escobar said was the best evidence of materiality, there are none that are satisfied in this case. What you have in this case is an argument that existed some time ago. And the Hendow case in my 15 years of litigating that issue subsequently turned into an automatic presumption of materiality because it was triple conditioned, and you have that argument by my adversaries here. But none of that evidence that is laid out in Escobar is satisfied here. What you have is the bare assertion that the statute, the regulation, and the contract incorporate the incentive comp ban, and legislative history is before you and was before the district court. Other courts have held, look, the fact that the government deems something important isn't enough. It has to treat that in a way that relates to claims for payment, and the fact of the matter is it just simply does not. Counsel, did you want to save some rebuttal time? I'm going to, Your Honor. I see I'm down to two minutes. I'll reserve that for rebuttal. Thank you. May it please the Court, Charles Scarborough for the United States. This is amicus curiae. We appreciate the Court allowing us to appear in this very important false claims act case, and we appreciate Relators Council sharing their time. I'm going to try to not bleed too much into their time. I want to address the first issue. Judge Smith, you had it exactly right that there is nothing in Escobar that changes the ABIAD ruling. Escobar, the Supreme Court, endorsed the implied certification theory and confirmed that claims may be false under the False Claims Act if they omit information necessary to keep them from being misleading, even if they have no expressed untruths in them. And that was a very ---- Nonetheless, I appreciate where you went. And I was asking the questions, and I was like, I hope, a good cross-examiner trying to lead him. But the bottom line was, CAMBI does use mandatory language. It says there's a two-part test in Escobar, and we're applying it, and there it is. Am I bound by that? No, Your Honor. CAMBI, first of all, was it the case in which it ---- Well, let me ask you ---- Oh, wait a minute. It seems CAMBI may have misinterpreted Escobar as containing a firm requirement that there had to be a representation, a specific representation, but as another three-judge panel, we're bound by CAMBI even if it overshot what Escobar requires. I didn't mean to suggest that you're not bound by prior pre-judge panels. Obviously not. IBIAD sets the standard here. CAMBI in no way quarrels with the IBIAD standard. What I was trying to suggest inartfully was that CAMBI basically said that the requirements in Escobar, the two-part test was satisfied, in the same way that Escobar only dealt with what it was, you know, what it saw before. And I can't ---- Well, regardless, would you tell me what are the specific representations about goods or services that were made here? Sure. I mean, again, our threshold ---- I want to make clear our threshold argument is that there doesn't ---- there is no specific representation for CAMBI. Well, I understand that, but I don't read CAMBI the same way you do, so I'd like to hear your answer to my question. That's important. Maybe before we get to that, do you think we ought to call this case on bunk? I don't think it's necessary. To take it to your decision? No, I don't think it's necessary to at all. I mean, that's the worry that I have with the language in CAMBI, that if I go your way, and I think there's a little confusion out there in some of our cases, do I need to go on bunk to really resolve this? I don't think so, Your Honor. And I think that the case is easily resolved by the plain language of Escobar itself. When it set forth the two-part test that everyone, you know, they're saying is mandatory, it says at least where two conditions are satisfied. And it then went forward and said, because I have specific representations here, I don't need to think about the broader theory, and it specifically said ---- this is language you didn't hear. You're going forward. I got your answer. I borrowed from the presiding judge. She asked you a very specific question as it relates to the materiality. Well, no. I was asking first about specific representation. And I'll get to materiality, too, but what are the specific representations here? Sure. First of all, I think it's important to understand what Escobar means by specific representations. Escobar is not talking about something that is expressly false in the claim. The whole point of the implied certification theory is that you are making, you're submitting a claim that has something that is misleading in the claim as a whole based on, you know, what you've left out. And here, what you've left out is very important, noncompliance with the incentive compensation ban. So in Escobar, you had specific representations that were essentially just Medicaid billing codes. They were eight-digit codes that were submitted to you. Okay. What are they here? I'm asking about what they are here. Right. And so the claim, the sample claim form is at ER 183, and it's the entire claim form essentially piggybacks on the program participation agreement that was the initial thing that all these schools had to sign, in which they promised to comply with lots of things, including the incentive compensation ban. And they say in their claims, in the sample claim here, that they are an eligible program, that they are eligible borrowers. They talk about school codes. They reference a school code that can only be obtained through having participated before and entered into this program participation agreement. In other words, they reference the prior course of dealings, and they take advantage of the fact that they've made these prior promises. That was what this Court recognized in the Hendow case. You know, they promise at the outset to comply with all these things, and then when they don't comply, when they knowingly violate something as important as the incentive compensation ban. That takes me to materiality. Yes. Tell me about materiality. Sure. That was, I read the district court's second go-round as saying that at a minimum there is an issue of fact on the question of materiality. I agree with you 100 percent that that's what the district court said. Is that right? I think that's correct, and I think that this Court doesn't need to do anything more than say that, yes, there was enough here to create a jury question as to materiality. Okay. What is there to create the jury question? Sure. Well, the Escobar factors, and it's not as if Escobar announced a four-factor  decision for things it thought important. One of the things that it clearly thought was important is whether the thing is a prerequisite to payment. I mean, that was the essence of the Hendow decision was, yes, we're going to, you know, not sort of hang our decision on this distinction between conditions of participation and conditions of payment, because the incentive compensation ban is both. Escobar does not in any way repudiate that. Escobar says that remains highly relevant. It just adds some additional things you look to. One of the things you look to is whether it goes to the essence of the government's bargain. Here, the incentive compensation ban is fundamental to the why the Department of Education would be willing to pay, you know, allow schools to participate in this program, because it's the way you ensure that you're getting qualified students who are not likely to default on the loans where the government is, you know, going to be left holding the bag. Is Hendow reconcilable with Escobar? Yes, Your Honor. How? I think what Escobar does. I mean, when I read Hendow, now just let me tell you what I think about Hendow. It seems to me that Hendow, we relied almost exclusively on the labeling decisions of the government. We focused on the fact that ICB was among the prerequisites to participating and thus receiving the funds. Escobar, it seemed to me, rejected this focus on labels. I agree with you that Escobar rejected a focus on labels. I don't — Escobar expressly says that designation as a condition of payment remains relevant and highly probative. I think what Escobar says is you've got to do a little bit more work. So I think what Escobar suggests is that Hendow's analysis is incomplete, but then the district court — And then it's irreconcilable. No, I don't — We've got to do more. I don't agree with irreconcilable. I think that it suggests that it's incomplete. And the district court did some additional analysis. And I'm trying to walk through the additional steps. The four things we set out in Hendow are not the same as what happened in Escobar, but I don't see that they're inconsistent either. That's precisely the point I was trying to make to Judge Smith, is that it's clear that Escobar says you have to do more. You can't just rely on the fact that it's codified in the statute, the regulation, and the PPA as a condition of payment. You have to look to whether it goes to the essence of the bargain. That's what I was trying to establish, that, you know, this is a fundamental thing here. You have to look at whether the violations were significant. Here the allegations are that these recruiters were paid, you know, up to $30,000 to bring in students who were unqualified. They devised a scorecard system in which they tried to sort of hide the fact that they were violating the incentive compensation ban. All these sorts of things that show serious violations, these weren't sort of mere regulatory infractions. And then Escobar does also speak about the governmental action, what the government has done in response to similar violations. And the fact of the matter is the Department of Education hasn't always, you know, the Department of Education rarely knows sort of up front, you know, schools don't come to the Department of Education and say, hey, we'd like to get Title IV funds, but we're not going to comply with the incentive compensation ban. I don't think there's any evidence that the Department of Education would ever let a school into the program in that situation. What you have is the Department of Education settling cases, settling, you know, cases like after the Hendow case, you know, bringing actions to enforce and impose fines. You have evidence at least sufficient for a jury to conclude that the government cared about this and this was relevant to the payment decision. So that's sort of the body of evidence that demonstrates materiality at least sufficient for a jury to conclude that. So if you convince me that I'm not going to look to the past enforcement efforts generally. I'm not trying to convince you not to look to them. I'm just trying to convince you. Well, it seems to me that you're saying I can't look to them solely. I've just got to look to them generally. That I look to them, well, I guess I'm trying to figure out. It seems to me that what you're really suggesting is that I don't look to these past enforcement efforts, which I thought Hendow really focused on. I can look to them as one of the characteristics, if you will, about what I might be thinking about. But then I also have to analogize past enforcement to the facts of a given case. Is that what I have to do? I'm not suggesting that you can't look to that. All we're suggesting, we're resisting, is the notion that sort of the government failure to identify a situation in the government, you know, where the government has withheld payment is not dispositive to the materiality inquiry. That there are multiple factors here, and that generally speaking that creates a fact question for the jury. And we have factors that strongly favor a finding of materiality.  I see what you're saying. You're saying that one does not decide this issue of materiality as a matter of law because of the mere fact that there is not evidence of revocation or recoupment in other cases. That's correct, Your Honor. Is that your only point? That's not my only point. Well, on that issue. That's a significant point. And that's something that's mirrored in the Miller case, which is also an education case, where the Court likewise there sent a similar case. I assume that's because there could be many reasons why the government didn't go after someone else. It was too small or they didn't have the resources or any myriad number of reasons that it doesn't negate as a matter of law that it's material. That's correct, Your Honor. And Escobar did not in any way establish the government action point as sort of the dispositive thing. It says it's something that's in the mix. And that's why my response to you on the handout is that it's an incomplete analysis now. Escobar has added some other things you need to look at. And the district court properly took those into account and added them to its analysis. I'm really running into Relator's couch this time. You may proceed to Mr. von Lohenfeld. Thank you. Thank you, Your Honors. Michael von Lohenfeld of Kern Wagstaff for the Relators. Let me pick up right where we just left off. What Escobar was trying to do is to frame a range, a spectrum of issues. It was presented with an argument by the government that every single thing that simply says condition is necessarily material and, on the other hand, that nothing that doesn't say condition can be material. And what the Escobar court says is, no, we don't – you don't analyze the spectrum that way. There are some things that are labeled conditions where it is clear from the record that the government acts with full knowledge, and the court uses the term actual knowledge, that the violation has occurred and still pays anyway. So Kelly is a good example of that, where there is a technical requirement in the regulation, but not in the contract, interestingly, for a particular form of financial report. And the government actually wants a different form, and they ask for and get and accept a different form. And the court says, quite correctly in Kelly, that's not a material violation because the government, with full knowledge of what was going on, asked you to do that instead of this. Okay? On the other hand, Escobar says there are some things that aren't labeled conditions where it's clear because of what the government does or because of the nature of the program that it's material anyway. And Hendo is definitely consistent with that, where it talks about it could be a handshake. It doesn't have to be a condition. I see no daylight at all between Escobar and Hendo. What Hendo is not saying, because it's in, it's called a condition, it's automatically material. Hendo looks at the legislative history, the fit between the logic of this ICB requirement and, or I should say prohibition, and the Title IV funds being provided, the regulatory history and the contract, and says, here, this provision is sufficiently important as evidenced by these factors that it's material. And I think that's undisputable. There is not a single fact in the record that the government has ever authorized a school to violate the incentive compensation ban, that the government has ever said to a school, we understand that you're not going to comply with the ICB in the future, but we're still going to pay you anyway. These have all come up in the context of disputed allegations where the government has either settled or schools have gone away. There is no, if there was evidence, if this was like Kelly and the government had come to AAU and said, you know, we're okay with you paying $30,000 if someone hits their goal, that's fine, then I wouldn't have a case. Then I, I, but that's not where we are. Let me ask you this. The, the district court seemed to be doing potentially two different things, and I'm trying to figure out which of those different things you think is correct. It seemed to me that there was both an assertion that there was a material issue of fact on materiality, so that's sort of redundant, and that it was material as a matter of law on this record. Which do you think the court was saying? Do you agree it was trying to do both, and where do you think we should come out? So I'm going to give you a really practical answer to that, because I'm a trial lawyer as well as being a court lawyer. I, I actually agree with Mr. Gombos. On this record, the materiality is a question of law. It's clearly material for all the reasons Hendow says, for the importance of the statute, for the clear record, and the reason that's important is the jury's got to get an instruction as to what to do. And I don't know what the jury's supposed to do with the OIG report in deciding why they did or didn't settle certain cases, why penalties were. It's all just speculation. Are we going to have a two-year trial where we call in witnesses from what happened 20 years ago in other schools? Of course not. So there are going to be cases where it's a tribal issue of fact, and I think that's going to tie largely to the severity of the violation. You know, if we're talking about a free cup of coffee once a year to somebody, that's the kind of thing that Escobar says is trivial. That's the American stapler. That is not going to be material. But that's not what we're talking about here. And our position is that on these facts, in the facts on the record that the Court found were, you know, tribal issues as to summary judgment, but more importantly, the nature of the ICB itself, the centrality of this requirement to the statutory esteem enacted by Congress, and, you know, we address in the brief the Hansen Memo and why that's not controlling, but even with respect to the Hansen Memo, the government never said this is not an important requirement. This is not Kelly. This is not the guardrails in the case that's escaping me, the name I have in the Third District. This is like Miller. Actually, it's exactly like Miller. This is a material requirement. Schools are not supposed to pay per head for students they recruit because when they do that, it taints the process of providing student aid, and it makes the government aid go to students who shouldn't be receiving it to enrich the school and not to help the students. It's fundamental to this program. And that is, in our view, as Hendau said, material is a matter of law. There is nothing in Escobar that's inconsistent with that. And I disagree with my friend, Mr. Gombos. The Escobar does not say that government's conduct is most important. It does not shift the theory. It simply says when you're looking at this spectrum, there are going to be things that are called conditions that, you know, for example, they say the American State Board are. Sotomayor, and there will be things that are important that are not called conditions. Correct. And looking at what the government did might help you pick which is which. But it doesn't mean that you have to look at what the government did in every case. And, in fact, if it did, that would be a crazy situation because a new requirement could never be material. Remind me of the elements of the offense. Isn't there a materiality requirement? Well, there is, and there is a materiality requirement. And a center requirement. So how does the jury address that issue? Well, I think the question here of materiality is really a legal question. That's not a question for the jury because the question is whether the, I guess, let me split that. There's a question as to whether the ICB itself is material, right? Is that a material requirement? That's a question, I think, for the court because I don't think I have a jury can possibly analyze that in this specific situation. There's another question as to whether the size of the violation is material. Is it a trivial violation or an important violation? So, you know, if AAU can manage to prove that they did not, in fact, pay large amounts of money to people and that we're talking about a Starbucks gift card or something, maybe they can convince the jury that's not a material violation, it's a trivial violation. That's different than whether the legal requirement not to pay recruiters on a per-head basis is a material requirement of the law. And it's not one of thousands and thousands of requirements. This is a central requirement. The court has to analyze it, as the court did in Hendau. Nothing in Escobar is inconsistent with that. And this panel, I think, is, as the Court recognized below, still bound by Hendau on this point. And even Miller, the Eighth Circuit in Miller, reaches the exact same conclusion with respect to the recordkeeping aspects of Title IV, which are very closely – it's not the same as the ICB, but it's a similarly important requirement even post-Escobar. It is not the case that they can violate the ICB with impunity and the court should ignore congressional intent and simply let a jury figure out whether they think 32 settlements is enough, with really no basis to do that, frankly. So I see I've well exceeded my time. If the panel has any questions, I'd be happy to answer them. Sotomayor, I don't believe that we have any further ones, at least not at the moment. Roberts, thank you. Let me start off with Miller. Miller happened to be my case. One distinction between Miller and what I've argued today to the panel and what the record of ICB enforcement shows is that the Miller court expressly found that the Department of Education had terminated participation and eligibility to draw down funds based on those recordkeeping – the records that were at issue in that case. And I've already told the panel today, that goes to the heart of the Title IV program. What was at issue there? Recordkeeping that related to claims submitted for funds based upon student eligibility and how far they advanced in their education endeavor. I believe one thing I'd like to mention about Hendow that is lost, the government did not, does not label ICB compliance expressly as a condition of payment. Hendow looked at that and made the determination that because it was a fundamental condition of participation, it amounted to the same thing. Otherwise, I believe the court held, no university would be accountable for violating core requirements in the PPA. But what is a core requirement, I agree with my colleague, is a matter of law. And for materiality purposes, I don't know how you can look at the Hansen memo, that's Excerpt Record 104, and what is stated policy confirmed by the enforcement of DOE over some 15 years and conclude that it's material to its payment of claims. And that's the focus of ESCOBAR. I think the last point I would make is I think government knowledge, the government knowledge defense is one, it's a defense to SIENTA, it's also, it's also considered with respect to materiality. In this case, I believe the Third Circuit in U.S.X.R.L. versus Caremark analyzed that in a way we would advocate that you do in this case, which is the government is aware of the ICB requirement, the government didn't act to enforce the ICB requirement in a manner that would be consistent with establishing FCA materiality as to the payment of claims. It simply has not done that. I believe the Ninth Circuit, if it had the advantage of that record, in hindsight, when it issued handout, wouldn't have issued the same opinion. It would have concluded it's not material. If there's any other questions? I think we understand your position. Thank you. Thank you. The case just argued is submitted. We appreciate the arguments of both counsel, all three counsel, I should say. And our final argued case today is Pickard versus Department of Justice.
judges: Graber, N.R. Smith, Zipps